# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | * | CRIMINAL NO. 053l 2:18cr00199 |
| | * | |
| VERSUS | * | |
| | * | |
| JEFFREY B. MONTALBANO | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | * | |

## <u>DEFENDANT'S SENTENCING MEMORANDUM</u>

Defendant, Jeffrey B. Montalbano, comes before this Court for sentencing after having pled guilty to one count of "False Statements or Representations Made to a Department or Agency of the United States." Mr. Montalbano submits this sentencing memorandum to aid the Court in determining an appropriate sentence under 18 U.S.C. § 3553(a). The U.S. Probation Office ("Probation") has calculated, under the U.S. Sentencing Guidelines ("Guidelines"), a sentencing range of 18-24 months in prison, with a statutorily authorized maximum term of imprisonment of 5 years. However, as noted in Defendant's Objections (Doc. 36), Mr. Montalbano maintains that the correct sentencing range is 0-6 months, based upon a total offense level of five (5). <u>See</u>, *Infra.*

## BACKGROUND

Mr. Montalbano, is a 58-year-old husband and father of four who has been a lifelong resident of the Greater New Orleans area. He has no prior criminal history and has been steadily employed throughout his life, having spent the prior five years in law enforcement serving as a domestic violence investigator for the St. Tammany Parish District Attorney's Office.

As noted in the Presentence Investigation Report ("PSR"), Mr. Montalbano has lived in the State of Louisiana his entire life, having grown up in the New Orleans and Covington area in a happy and "close-knit" home.[1]. Mr. Montalbano has two sons, Jeff and Matt, from his first marriage. Mr. Montalbano also has two other sons, Josh and Luke, from prior relationships. Mr. Montalbano is actively involved in all of this children's lives, regularly coaching his children's athletic teams and sponsoring their athletic events.

For most of his adult life, Mr. Montalbano has been employed in various facets of sales, business consulting, residential/commercial developments and contracting. In 1991, Mr. Montalbano started a construction company that focused on both commercial and residential developments. As a state licensed contractor, Mr. Montalbano successfully constructed and developed over 500 residential and commercial projects. While managing his construction company, Mr. Montalbano also began to manage the Orpheum Theatre in New Orleans, Louisiana, a position that he continued to hold through 2005. During his time at the Orpheum Theatre, Mr. Montalbano was a member of the New Orleans Tourist Commission, and the New Orleans Hospitality and Hotel Sales Association, and coordinated various charitable events.

With his successful background in managing the Orpheum Theatre, in 2007 Mr. Montalbano took a position as executive manager of Bayou State Holding Company, a commodity sales company that focused on steel and fuel. From these experiences Mr. Montalbano started JBM Oil Sales Corporation in 2007, which focused on sales and development in the commodities market, as well as property development and investment. Shortly thereafter, in 2009, Mr. Montalbano founded JBM Equity Partners, LLC, which served as the managing entity for several residential developments, as well as maintaining and liquidating assets for a regional bank.

---

[1] See PACER Doc. 24, Paragraphs 41-45.

In 2015, following the downturn in the oil and gas market and resulting shortage of investment and development opportunities, Mr. Montalbano took a position as a domestic violence investigator with the St. Tammany Parish District Attorney's Office. In his position as an investigator Mr. Montalbano was responsible for coordinating with state and federal law enforcement agencies, for collecting and processing evidence, and for assisting in the prosecution of criminals.

Mr. Montalbano has always been an active member of his community. He is an active volunteer at the Northshore Food Bank in the greater Covington Area.[2] Mr. Montalbano has also been an active member of First Baptist Church in Covington since 1985, serving in various outreach programs and donating both money and time to support several outreach ministries. Mr. Montalbano's termination from the District Attorney's Office in April 2018 as a result of the federal investigation has been devastating – it has resulted in Mr. Montalbano and his wife selling their family home and moving into a small apartment due to financial difficulties, has caused both emotional and financial stress in Mr. Montalbano's life, and has prohibited him from gainful employment. While Mr. Montalbano has been actively seeking employment since April 2018, maintaining a job is complicated due to the criminal charges and uncertainties of the pending sentencing hearing.

As this Court is aware, this case stems from an open investigation by the Federal Bureau of Investigation ("FBI") into certain monetary amounts paid to an entity owned by Mr. Montalbano. Pursuant to this investigation, Mr. Montalbano was contacted by an agent of the FBI requesting an interview. Mr. Montalbano agreed to the interview, which took place on January 23, 2018. During the interview, Mr. Montalbano willingly answered the questions posed to him. However, Mr. Montalbano readily admits that he made false statements and/or

---

[2] See PACER Doc. 24, Paragraph 61.

omissions, as stated in the Factual Basis.[3] However, the underlying investigation itself was not pursued by the FBI or the U.S. Attorney's Office.

In short, Mr. Montalbano is and has been an active member of the local business and church communities for decades. He is a loving father and husband, an active-church member, and a person known to give both time and money to those in need. Not only is Mr. Montalbano's criminal record non-existent, but he has spent the last 5 years in law enforcement putting criminals in jail. Mr. Montalbano clearly presents no risk to anyone and, given the circumstances in this case, the loss of his job and family home, a sentence of probation or supervised release would be "sufficient, but no greater than necessary," to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

## ARGUMENT

Under 18 U.S.C. § 3553(a), a sentencing court must "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in the second paragraph of the statute. In undertaking its analysis, the Court considers the advisory sentencing range recommended by the Guidelines and any relevant Guideline policy statements, as well as other traditional sentencing factors, such as:

(1) the nature of the offense and history and characteristics of the defendant;

(2) the purpose of sentencing;

(3) the kinds of sentences available;

(4) the Sentencing Guidelines;

(5) pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted disparities among similar offenders; and

---

[3] See PACER Doc. 17, p. 3.

(7) the need to provide restitution to victims.

18 U.S.C. § 3553(a).

Nearly 20 years after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), it is now "emphatically clear" that the "Guidelines are guidelines – that is, they are truly advisory." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*). The Guidelines are no longer "the only consideration" at sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). Rather, the Guidelines merely provide a "starting point" for the Court's sentencing considerations. *Id.*; *accord Cunningham v. California*, 549 U.S. 270 (2007). The Court is to impose its sentence after "mak[ing] an individualized assessment based on the facts presented" in each particular case. *Id.* The Court need not find "extraordinary circumstances to justify a sentence outside of the Guidelines range." *Id.* at 47.

As one district court judge has put it, the Guidelines' "most fundamental flaw is the notion that the complexity of human character and conduct can be rationally reduced to some arithmetic formula."[4] *See*, *e.g.*, *United States v. Adelson*, 441 F. Supp. 2d 506, 512 (S.D.N.Y. 2006) (describing "the utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense."); *see also United States v. Parris*, 573 F. Supp. 2d 745, 754 (E.D.N.Y. 2008. The Supreme Court's decisions in *Gall*, *Cunningham*, and *Kimbrough v. United States*, 552 U.S. 85 (2007), significantly broadened the discretion of courts to impose a less stringent sentence than the one suggested by the Guidelines, and in this case the Court should exercise its broad discretion and impose a sentence substantially below the statutory maximum, one that instead of incarceration imposes supervised release or probation, especially

---

[4] Terry Carter, *Rakoff's stance on the SEC draws fire, praise—and change: The Judge Who Said No*, ABA Journal, Oct. 2013, at 53.

since Mr. Montalbano has pled guilty and accepted responsibility for his actions, has no criminal history whatsoever, has been employed in law enforcement for several years, and is an upstanding member of a community where he has lived his entire life.

### 1.    The Nature and Circumstances of the Offense

Here, Mr. Montalbano pled guilty to one count of "False Statements or Representations Made to a Department or Agency of the United States." The offense conduct is set forth in detail in the Factual Basis filed on November 1, 2018 and accepted by Mr. Montalbano. (Doc. 17). As noted above, Mr. Montalbano voluntarily submitted to be interviewed by the FBI, and admits that he made false statements during the interview, as recited in the Factual Basis.[5] However, the underlying investigation was never pursued by the FBI or the U.S. Attorney's Office.

### 2.    The History and Characteristics of the Defendant

#### a.  Personal Life

As noted above, Mr. Montalbano is a 58-year-old husband and father of four with no criminal history whatsoever, other than the instant offense. In fact, he has been employed in law enforcement for the last five years, serving as a domestic violence investigator with the St. Tammany Parish District Attorney's Office and has helped put countless offenders in jail. As noted in the PSR, Mr. Montalbano does not appear to have a propensity for violence or to be a threat to public safety, and further that "he appears to have lived an otherwise law-abiding life." (Doc. 24, ¶¶ 87-88).

In addition to being an active member of First Baptist Church in Covington for the last 34 years, Mr. Montalbano has volunteered at the Northshore Food Bank in Covington and has donated time and money to several Christian-based ministries and outreach programs. He has

---

[5] See PACER Doc. 17, p. 3.

served as both a coach and a sponsor for his children's athletic events, has coordinated numerous charitable events through his various business associations and affiliations, and has lived nothing but a "law-abiding life."

Mr. Montalbano's good character is evidenced by the numerous letters filed into the record of this matter from various persons involved in Mr. Montalbano's life. (Docs. 28, 29, 30, 32, 35).

### b.  Business Life

Prior to working for the St. Tammany Parish District Attorney's Office, Mr. Montalbano was employed in various facets of sales, business consulting, residential/commercial developments and contracting. It all began in 1991 when Mr. Montalbano became a state licensed contractor and started a construction company that focused on both commercial and residential developments. At the same time, Mr. Montalbano began managing the Orpheum Theatre in New Orleans, where he managed the personnel, coordinated events, and was actively involved in the tourism and hospitality industry in New Orleans.

In 2007 Mr. Montalbano took a position as executive manager of Bayou State Holding Company, a commodity sales company that focused on steel and fuel. From these experiences Mr. Montalbano started JBM Oil Sales Corporation in 2007, which focused on sales and development in the commodities market, as well as property development and investment. Shortly thereafter, in 2009, Mr. Montalbano founded JBM Equity Partners, LLC, which served as the managing entity for several residential developments, as well as maintaining and liquidating assets for a regional bank.

In 2015, following the crash in the oil and gas market and resulting shortage of investment and development opportunities, Mr. Montalbano took a position as a domestic

violence investigator with the St. Tammany Parish District Attorney's Office. In his position as an investigator Mr. Montalbano was responsible for coordinating with state and federal law enforcement agencies, for collecting and processing evidence, and for assisting in the prosecution of criminals. Mr. Montalbano held his position at the St. Tammany Parish District Attorney's Office until April 2018, when he was terminated as a result of the instant investigation.

### c. Age and Health

While Mr. Montalbano may not be "elderly and infirmed" under the customary use of the words, he is 58-year-old male who suffers from heart issues stemming from a family history of heart disease, as well as occasional panic attacks. Section 5H1.1 of the Sentencing Guidelines Manual reads:

> Age (including youth) is not ordinarily relevant in determining whether a departure is warranted. Age may be a reason to depart downward in a case in which the defendant is elderly and inform and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration. Physical condition, which may be related to age, is addressed at §5H1.4…

The pertinent portion of §5H1.4 reads:

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinarily physical impairment may be a reason to depart downward; e.g., in the case of a seriously inform defendant, home detention may be as efficient as, and less costly than, imprisonment.

As stated in §5H1.1, age "is not ordinarily relevant in determining whether departure is warranted." Nonetheless, circumstances such as age may be relevant "to the determination of whether a sentence should be outside the applicable guideline range" "in exceptional cases." USSG Ch. 5, Pt. H, Intro. Comment. See also United States v. Collins, 122 F.3d 1297, 1307 (10th Cir. 1997); United States v. Hildebrand, 152 F.3d 756 (8th Cir. 1998) *overruled in part by*

Whitfield v. United States, 543 U.S. 209 (2005).  There are a number of decisions where courts have given notably less weight to the Sentencing Guidelines in recognition of the fact that older individuals, some as young as 40, are less likely to commit additional crimes. See United States v. Carmona-Rodriguez, No. 04CR667RWS, 2005 WL 840464 (S.D.N.Y. April 11, 2005); United States v. Hernandez, No. 03 CR 1257(RWS), 2005 WL 1242344 (S.D.N.Y. May 24, 2005); United States v. Nellum, No. 2:04-CR-30-PS, 2005 WL 300073 (N.D. Ind. February 3, 2005); and United States v. Phillips, 368 F. Supp. 2d 1259 (Dist. N.M. March 21, 2005).

Also, inherent in §5H1.1 is the consideration of costs. According to the PSR, the cost of imprisonment for Mr. Montalbano will be $3,025.00 per month.[6] While the PSR is silent as to the cost of probation, it does state that the cost of supervised release would $364 per month, which amount would be similar to that of probation. Thus, the cost difference between incarceration and supervised release/probation is significant.

### d. Community Service

As noted herein, Mr. Montalbano has been voluntarily performing community service at the Northshore Food Bank in Covington, Louisiana. He began in early November 2018, volunteering every Monday, Wednesday and Friday from 9 a.m. until 1 p.m. Mr. Montalbano volunteer work has included over one-hundred hours of physical labor, and continued through May 2019, when Mr. Montalbano found temporary employment (see Doc. 35). In her letter to the Court, Mrs. Kara McSwain, manager at Northshore Food Bank in Covington, noted that Mr. Montalbano has been a "valuable part of our volunteer team" and is "passionate about positive community involvement." (Doc. 35). Mr. Montalbano's volunteer work further evidences his character and his full acceptance of responsibility for his actions.

---

[6] See PACER Doc. 24, Paragraph 84.

### 3.     The Purpose of Sentencing

Pursuant to the sentencing statute, a defendant's sentence should be designed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2).

While Mr. Montalbano does not dispute his guilt, the above factors do not warrant a term of incarceration. Mr. Montalbano's lack of a criminal record and employment in law enforcement evidence his respect for the law. Further, there is no risk of recidivism, especially considering the nature of the offense, Mr. Montalbano's complete lack of criminal history, and his status as an upstanding member of a community where he has lived his entire life. *See*, *e.g*., *United States v. Smith*, 275 F. App'x 184, 187 (4th Cir. 2008) (affirming 54 months downward variance in part because of low risk of recidivism). Statistical data from a study commissioned by the United States Sentencing Commission show that "[r]ecidivism rates decline relatively consistently as age increases." United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004) at 12.[7] That study indicates that a defendant over the age of 50 and in criminal history category I has a 6.2 percent likelihood of recidivating. *Id*. at Ex. 9.[8] It is plain that the likelihood of recidivism for a nearly 60-year-old man such as Mr. Montalbano is far less than 6.2 percent. Beyond his age, a

---

[7] See https://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2004/200405 Recidivism Criminal History.pdf.

[8] A related study of recidivism rates by "true" first offenders (*i.e.*, those with no prior involvement with the criminal justice system) showed that such first offenders had a "primary" recidivism rate (including supervised release/probation violations, re-arrest, and re-convicted) of 6.8 percent, and a re-conviction rate (involving an actual conviction for a subsequent offense) of only 2.5 percent. U.S.S.C., *Recidivism and the "First Offender,"* at Ex. 6 (*available at*: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/ research-publications/2004/200405_Recidivism_First_Offender.pdf).

number of other characteristics make recidivism highly unlikely, including Mr. Montalbano's education, lack of illicit drug use, and deep roots in the community. *See Measuring Recidivism*, at 12-13.

Mr. Montalbano has been thoroughly penalized already – he lost his employment with the St. Tammany Parish District Attorney's Office, was forced to sell his home due to financial concerns, and has had severe difficulties seeking employment as a result of these proceedings. There is no reason for this Court to believe that incarceration for any period of time is necessary to prevent him from committing further crimes. He poses no risk to the public and a period of incarceration will cost significantly more than a period of probation or supervised release.

4.      **The Kinds of Sentences Available**

The Court has the authority and discretion to impose a wide range of alternatives to the lengthy term of incarceration contemplated by the Guidelines or the maximum penalty authorized under the relevant statutes. *See* 18 U.S.C. §§ 3553(a)(3) and 3561(a)(1). While Mr. Montalbano objects to certain portions of the PSR and its calculation of the imprisonment range, as seen below, supervised release or some other non-custodial sentence is more than appropriate given the nature and circumstances of this case.

5.      **The Sentencing Guidelines and The Commission's Policy Statements**

According to the PSR, the Guidelines provide for an imprisonment range of 18-24 months, based upon a total offense level of 15, and further provides for supervised release in lieu of incarceration.[9] However, as noted in Mr. Montalbano's objections to the PSR, he disputes the base offense level of fourteen (14) as it was never established that Mr. Montalbano received a bribe. Further, Mr. Montalbano disputes the offense level increase of four (4) based upon the

---

[9] See PACER Doc. 24, paragraphs 75-81.

total loss being more than $15,000 but less than $30,000. If calculated correctly, Mr. Montalbano's base offense level would be six (6), pursuant to USSG §2B1.1. Further, while Mr. Montalbano maintains that any increase based on monetary amounts is improper, the only amounts received by Mr. Montalbano were two $5,000 payments. Therefore, if any increase is applied, it should only be an increase of two (2) rather than four (4), pursuant to USSG §2B1.1. Thus, given a subtotal offense level of eight (8), and a decrease of three (3) as provided in the PSR, the correct total offense level for Mr. Montalbano would be five (5) and, as Mr. Montalbano has a Criminal History Category of I, the proper Guideline imprisonment range would be 0-6 months imprisonment.

**6.      The Need to Provide Restitution to Any Victims of the Offense**

Restitution is not applicable in this case.

**7.      A Non-Custodial Sentence is Appropriate**

Thus, the circumstances presented in Mr. Montalbano's case justify a departure from the Sentencing Guidelines as recommended in the PSR. More importantly, now that the decision in United States v. Booker, 543 U.S. 220 (2005) has made the Guidelines advisory and the parsimony clause of 18 U.S.C. § 3553(a) the paramount consideration, the history and characteristics of Mr. Montalbano show that a period of supervision that includes home detention or probation is "sufficient but not greater necessary to comply with" the goals of sentencing. Mr. Doe, therefore, requests this Court to impose just such a sentence. Accordingly, defendant, Jeffrey B. Montalbano, respectfully requests that this Honorable Court impose a non-custodial sentence.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Court impose a non-custodial sentence for defendant, Jeffrey B. Montalbano.

RESPECTFULLY SUBMITTED:

**WYNNE, GOUX & LOBELLO**
**ATTORNEYS AT LAW, L.L.C.**

*/s/ Vincent F. Wynne, Jr.*

BY: _____

VINCENT F. WYNNE, JR., LBRN 25309
410 N. Jefferson Avenue
Covington, Louisiana 70433
(985) 898-0504 Phone
(985) 898-0840 Fax
Email: vwynnejr@wgllawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 6th day of June 2019, I electronically filed the foregoing with the Clerk of Court of the United State District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Vincent F. Wynne, Jr.*
_____
Vincent F. Wynne, Jr.